UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

**INDICTMENT** CR 14-304 PJS/TNL

    v.

18 U.S.C. § 1343
18 U.S.C. § 1832

AARON QUOC KHIEU,

        Defendant.

THE UNITED STATES GRAND JURY CHARGES THAT:

**GENERAL ALLEGATIONS**

**AT ALL TIMES RELEVANT TO THIS INDICTMENT;**

1.    Boston Scientific Corporation ("Boston Scientific") was a corporation that developed, manufactured, and sold various medical devices. Boston Scientific had substantial operations in the State and District of Minnesota, including, but not limited to, a site in Maple Grove, Minnesota. Boston Scientific does business in, and its business activities affect, the interstate and foreign commerce of the United States.

2.    The defendant, AARON QUOC KHIEU, worked as an engineer at Boston Scientific's Maple Grove, Minnesota, facility. The defendant's duties included work on the development of new Boston Scientific catheters used to restore, improve, or maintain the flow of blood through blood vessels.

3.    The defendant worked on the development of catheters to be used in a medical procedure called Percutaneous Transluminal Angioplasty ("PTA").



4.      A catheter of the type the defendant helped design is a flexible, hollow tube with a balloon at the tip.  In PTA, a physician threads the catheter through an incision into a blood vessel that is partially or wholly blocked.  Once the balloon at the tip of the catheter is in the right position, the treating physician inflates the balloon, thereby pressing the blockage against the blood vessel's wall and restoring or improving the flow of blood through the blood vessel.

5.      Boston Scientific had made advances on various engineering, design, and manufacturing issues in catheter design.   These advances allowed Boston Scientific to develop a catheter with a stronger balloon than on earlier versions of Boston Scientific catheters.  While this new catheter was in development Boston Scientific referred to it as "Sapphire."  It was later commercially marketed under the name "Mustang."   A more advanced version of the Mustang was in development as the "Mustang Plus."  Upon commercial release, the "Mustang Plus" will be marketed as "Mustang."

6.   .   Documents related to "Sapphire"/"Mustang"/"Mustang Plus" were stored on Boston Scientific's engineering document management system.  By virtue of his position with Boston Scientific, the defendant was granted access by Boston Scientific to the portions of Boston Scientific's engineering document management system on which "Sapphire," "Mustang," and "Mustang Plus" documents were stored and maintained.

United States v. Aaron Quoc Khieu

7.     "Sapphire," "Mustang," and "Mustang Plus" were all products which Boston Scientific did sell and ship in interstate and foreign commerce or intended to sell and ship in interstate and foreign commerce.

8.     "Mustang Plus" was an advance on Boston Scientific's "Mustang" PTA catheter.  One way to strengthen the balloon at the tip of a catheter is to make the balloon multi-layered.  Before "Mustang Plus" Boston Scientific's PTA catheters had a single or a double-layer balloon.  "Mustang Plus" was designed with a three-layer balloon, which would be stronger than a single or double-layer balloon.  Balloon strength is one factor that is important to purchasers of PTA catheters.  Trade secrets that are involved in the design, engineering, and production of a three-layer PTA catheter balloon include, but are not limited to, the selection and proportion of various polymers that are included in the three different layers of the balloon, the settings on a three-layer extruder that is used to manufacture the three-layer balloon, tooling specifications for manufacture of the three-layer balloon, and manufacturing processes.  Documents detailing all of these trade secrets, and others, could be found on the areas of Boston Scientific's engineering document management system to which the defendant had access.

9.     Boston Scientific could be expected to derive economic benefit from "Sapphire," "Mustang," and "Mustang Plus."  To maintain the confidentiality of these products while they were in development, and thereby safeguard the economic benefit to be derived from it, Boston Scientific took various protective measures, including, but not limited to:

3

a. Maintaining the physical security of its facilities by requiring employees to use electronic access control cards, escorting visitors, and posting security personnel at entrances;

b. Maintaining security on computer systems with such features as passwords, and limiting access of employees to those parts of the network which they had a legitimate need to access;

c. Training employees on the need to maintain the confidentiality of company data, and ways to accomplish that. This training took the form of both training sessions, and printed materials that were distributed to employees;

d. Stamping confidential material prominently with warnings such as "BOSTON SCIENTIFIC CONFIDENTIAL;" and

e. Prior review and approval by Boston Scientific management of public speaking engagements and proposed publications by Boston Scientific personnel working on "Sapphire," "Mustang," and "Mustang Plus."

## COUNTS 1 - 7
(Wire Fraud)

10. The grand jury realleges each of paragraphs one through and including nine of this indictment as though they were set forth in full at this point.

11. On or about the dates set forth in the table below, in the State and District of Minnesota, the defendant,

**AARON QUOC KHIEU**

did knowingly execute and attempt to execute a scheme and artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and for the purpose of executing or attempting to execute such scheme and artifice, did transmit by means of wire, radio, or television communication in interstate or foreign commerce certain writings, signs, signals, pictures, or sounds, as specifically described in the table below.

## PURPOSE OF THE SCHEME AND ARTIFICE

12.     It was the purpose of the scheme and artifice to defraud that the defendant, AARON QUOC KHIEU, would wrongfully obtain property of Boston Scientific, specifically trade secrets used in the development, engineering, and manufacture of the "Sapphire," "Mustang," and "Mustang Plus" catheters, and would manufacture and sell a copy of the "Mustang Plus" catheter (to which the defendant had given the name "Snowcat") through a company he would start, to be called "Snowflake Medical," which would manufacture the defendant's copied catheters at a factory to be located in the Socialist Republic of Vietnam, and sold by the defendant to physicians,  hospitals, and others in the medical field in the Socialist Republic of Vietnam, the United States of America, and elsewhere; it was further a purpose of the scheme and artifice to defraud  that the defendant would finance "Snowflake Medical" with funds obtained from investors, and that such investments would be solicited via email or in person at a meeting held in Minnetonka, Minnesota on or about December 15, 2012, to which invitations were

sent via email.   At the Minnetonka meeting, the defendant also reported to potential investors in Snowflake Medical the results of a recent trip the defendant had taken to the Socialist Republic of Vietnam, and the results of meetings he had held there with physicians and hospital administrators.

### EXECUTION OF THE SCHEME AND ARTIFICE

13.   In execution and attempted execution of the scheme and artifice to defraud, the defendant, AARON QUOC KHIEU, solicited potential investors via email to invest in Snowflake Medical.

14.   In further execution and attempted execution of the scheme and artifice to defraud, the defendant, AARON QUOC KHIEU, invited persons via email to attend a meeting to be held in Minnetonka, Minnesota on or about December 15, 2012, at which meeting the defendant would brief attendees on a recent trip the defendant had taken to the Socialist Republic of Vietnam and his meetings with doctors and hospital administrators in that country, and would solicit investments from meeting attendees in Snowflake Medical.

15.   On or about the dates set forth below, in the State and District of Minnesota and elsewhere, the defendant, AARON QUOC KHIEU, executed and attempted to execute the scheme and artifice to defraud, by sending the emails described below:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION |
|---|---|---|
| 1 | August 14, 2012 | Email from the defendant to an identified employee of Vietnam Data Communication Company, Ho Chi Minh City, Vietnam, asking for advice about how to sell medical devices, |

United States v. Aaron Quoc Khieu

| | | |
|---|---|---|
| | | including balloon catheters, in Vietnam. |
| 2 | September 13, 2012 | Email from the defendant to multiple potential investors asking if they are interested in being initial investors ("angel investors" in the defendant's phrase) in a medical device company. |
| 3 | December 4, 2012 | Email from the defendant to multiple potential investors inviting them to a meeting to be held in Minnetonka, Minnesota on December 15, 2012. |
| 4 | January 3, 2013 | Email from the defendant to an identified, potential investor, soliciting an investment in the defendant's medical device company, and attaching a Powerpoint presentation about the medical device company and the catheter the defendant intended to manufacture and sell through that company. |
| 5 | March 4, 2013 | Email from the defendant to a different, identified potential investor, asking the potential investor to sign a non-disclosure agreement before the defendant sends to the potential investor a copy of the Snowflake Medical business plan, which business plan contained trade secrets of Boston Scientific. |
| 6 | March 12, 2013 | Email from the defendant to the identified potential investor described in Count 4 above, attached to which is a copy of the Snowflake Medical business plan, which business plan contained trade secrets of Boston Scientific. |
| 7 | May 27, 2013 | Email from the defendant to an identified employee of a medical device firm that is in competition with Boston Scientific, attaching a copy of the Snowflake Medical business plan, which business plan contained trade secrets of Boston Scientific. The identified employee's business responsibilities included marketing medical devices in Vietnam. |

all in violation of Title 18, United States Code, Section 1343.

## COUNTS 8 - 12
(Theft and Attempted Theft of Trade Secrets)

16.     The grand jury realleges each of paragraphs one through and including nine of this indictment as though they were set forth in full at this point.

17.     On or about October 8, 2012, in the State and District of Minnesota, the defendant,

## AARON QUOC KHIEU

did, with the intent to convert a trade secret of Boston Scientific Corporation to the benefit of someone other than Boston Scientific Corporation, knowingly steal and attempt to steal, and without authorization appropriate, take, carry away, and conceal, and by fraud, artifice, and deception obtain information, and attempt to do so, by downloading to a thumb drive which he then removed from Boston Scientific's premises, more than one hundred documents from Boston Scientific's engineering document management system.   Many of these documents were prominently labeled as the confidential, proprietary, intellectual property of Boston Scientific. These documents contained the trade secrets described in the table below alleging these Counts 8 through and including 12, as well as other information of Boston Scientific related to "Sapphire," "Mustang," and "Mustang Plus," including but not limited to, the:

- tooling dimensions;

- manufacturing processes, particularly extruder settings;

- polymer compositions;

8

United States v. Aaron Quoc Khieu

- and technical prints

of items associated with Boston Scientific's "Sapphire" "Mustang," and "Mustang

Plus" development project, a product that is produced for, or placed in, interstate

and foreign commerce, and which Boston Scientific had taken reasonable

precautions to keep confidential (see paragraph 9, above), and the confidentiality

of which had independent economic value to Boston Scientific in that said

confidentiality prevented competitors of Boston Scientific from marketing a

product equivalent to "Mustang Plus" without incurring the research and

development costs involved in independently developing a "Mustang Plus"-like

product independently.

| COUNT | FILE TITLE | DESCRIPTION OF TRADE SECRET |
|-------|-----------|------------------------------|
| 8 | 90517032.pdf | Mustang balloon tubing print |
| 9 | 90531924.pdf | Mustang balloon mold print |
| 10 | 90531925.pdf | Mustang balloon mold print |
| 11 | 90531926.pdf | Mustang balloon mold print |
| 12 | 8.0_Tube_DOE.xls | Extrusion run conditions |

all in violation of Title 18, United States Code, Section 1832.

United States v. Aaron Quoc Khieu

## COUNTS 13 AND 14
### (Theft and attempted theft of trade secrets)

16.     The grand jury realleges each of paragraphs one through and including nine of this indictment as though they were set forth in full at this point.

17.     On or about June 12, 2013, in the State and District of Minnesota, the defendant,

### AARON QUOC KHIEU

did, with the intent to convert a trade secret of Boston Scientific Corporation to the benefit of someone other than Boston Scientific Corporation, knowingly steal and attempt to steal, and without authorization appropriate, take, carry away, and conceal, and by fraud, artifice, and deception obtain information, and attempt to do so, by downloading to a thumb drive which he then removed from Boston Scientific's premises, more than one hundred documents from Boston Scientific's engineering document management system.   Many of these documents were prominently labeled as the confidential, proprietary intellectual property of Boston Scientific. These documents contained the trade secrets described in the table below alleging these Counts 13 and 14, as well as other information of Boston Scientific related to "Sapphire," "Mustang," and "Mustang Plus," including but not limited to, the:

-     tooling dimensions;

-     manufacturing processes, particularly extruder settings;

-     polymer compositions;

United States v. Aaron Quoc Khieu

- and technical prints

of items associated with Boston Scientific's "Sapphire," "Mustang," and

"Mustang Plus" development project, and were trade secrets that were related to a

product or service used in, or intended for use in, interstate and foreign commerce,

and which Boston Scientific had taken reasonable precautions to keep confidential

(see paragraph 9, above), and the confidentiality of which had independent

economic value to Boston Scientific in that said confidentiality prevented

competitors of Boston Scientific from marketing a product equivalent to "Mustang

Plus" without incurring the research and development costs involved in

developing a "Mustang Plus"-like product independently.

| COUNT | FILE TITLE | DESCRIPTION OF TRADE SECRET |
|---|---|---|
| 13 | Mustang+ Balloon Design and Design Verification Planning Report | Eight page document containing laboratory test results for Mustang Plus balloon |
| 14 | Description of Change | Blueprints showing modification of Mustang mold |

all in violation of Title 18, United States Code, Section 1832.

## FORFEITURE ALLEGATIONS

Counts 1-14 of this Indictment are hereby realleged and incorporated as if fully set

forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18,

United States Code, Sections 981(a)(1)(C) and 2323, and Title 28, United States Code,

Section 2461(c).

United States v. Aaron Quoc Khieu

As a result of the offenses alleged in Counts 1-7 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1343.

As the result of the offenses alleged in Counts 8-14 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 2323:

a.     Any article, the making or trafficking of which is prohibited under section 506 of Title 17, United States Code, or section 2318, 2319, 2319A, 2319B, or 2320, or chapter 90, of Title 18, United States Code;

b.     Any property used, or intended to be used, in any manner or part, to commit or facilitate the commission of any offense referred to in subparagraph a; and

c.     Any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of any offense referred to in subparagraph a.

The property subject to forfeiture pursuant to Title 18, United States Code, Section 2323 includes, but is not limited to:

1)     Apple iPhone 5, Serial Number: DNRJLZ6BDTTQ;

2)     SYX Systemax PC, Serial Number: 107447434;

3)     Fantom Drives GreenDrive, Serial Number: SH0368495;

4)     HP Flash Drive, black in color; and

United States v. Aaron Quoc Khieu

5)      PNY Thumb Drive, black in color.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b)(2) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                FOREPERSON

13