UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
District Court File No. 14-304 (PJS)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **SENTENCING POSITION OF** |
| ) | **THE UNITED STATES** |
| v. ) | |
| ) | |
| AARON QUOC KHIEU, ) | |
| ) | |
| Defendant. ) | |

The United States of America, through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorneys John Docherty and John Kokkinen, hereby submits its Position on Sentencing in the above-captioned case.

Defendant Aaron Quoc Khieu was a Boston Scientific engineer, employed by the company since 2002, who at the time of the offense was working on the development of a new model of vascular catheter called the "Mustang Plus." The Mustang Plus was a significant advance over existing vascular catheters (including Boston Scientific's own Mustang vascular catheter) principally because of design and engineering advances incorporated into the balloon at the catheter's tip, which, when inflated after being positioned in a patient's blood vessel, pushed any obstructions at that point in the blood vessel against the blood vessel's wall, restoring blood flow through the vessel. So that he could perform the duties of his employment, Boston Scientific gave Khieu access to its engineering document management database, which included many trade secrets of

1

Boston Scientific – information that Boston Scientific tried to keep secret, and that was of economic value precisely because it was kept secret. 18 U.S.C. § 1839(3).

Khieu decided to go into business for himself by setting up a factory in Vietnam to make a vascular catheter he named "Snowcat" that was essentially a copy of the Mustang Plus. By copying the Mustang Plus Khieu spared himself and his startup company, Snowflake Medical, the $4.3 million in research and development costs that Boston Scientific had spent on developing the Mustang Plus, and simultaneously inflicted $4.3 million in wasted research and development costs on Boston Scientific. In order to copy the Mustang Plus, defendant Khieu, on two occasions, October 8, 2012 and June 12, 2013, downloaded documents from Boston Scientific's engineering document management database that contained Boston Scientific trade secrets related to the Mustang Plus that the defendant needed in order to copy the Mustang Plus.

Defendant pleaded guilty to count 11 of the indictment, charging him with theft of trade secrets, in violation of 18 U.S.C. § 1832. Count 11 specifically alleged the theft of a "Mustang Balloon mold print." This mold print was transferred from the engineering document management database to the defendant's thumb drive on October 8, 2012. Following this mass download, in November of 2012, the defendant traveled to Vietnam to meet with doctors, hospital administrators, and others who might have been important to the success of the defendant's plans to manufacture the Snowcat catheter in Vietnam.

The defendant did not succeed in his business venture, and the Snowcat was not manufactured. The defendant's efforts to attract financing included convening a meeting at a Minnetonka office following his trip to Vietnam, and sending emails to potential

investors that had attached to them a business plan for Snowflake Medical. This business plan included some of the Boston Scientific trade secrets that the defendant had stolen from the company's engineering document management system.

### A. FOR GUIDELINES PURPOSES THE INTENDED LOSS AMOUNT IS $4.3 MILLION.

In the plea agreement and sentencing stipulations, the parties agreed that the research and development cost incurred by Boston Scientific to develop the Mustang Plus was $4.3 million. The government further submits that this research and development figure is the intended loss in this case, which is a claim with which the defendant disagrees, instead maintaining that there was no loss at all.

For purposes of United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1, "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, Application Note 3(A). Because in the end the Snowcat project did not proceed all the way to manufacturing, there is no actual loss in this case. However, the intended loss was $4.3 million. This is a trade secrets case, and a trade secret is information that derives its economic value from the very fact that it is secret. 18 U.S.C. § 1839(3) (defining "trade secret" for purposes of the federal criminal trade secrets theft statute, 18 U.S.C.§ 1832). As the indictment alleges, in the paragraph containing the count (number 11) to which the defendant pleaded guilty, the economic benefit Boston Scientific derived from secrecy was that it was secrecy which prevented competitors from bringing a Mustang Plus-like vascular catheter to market without also incurring research and development costs. If the results of that $4.3 million expenditure were available to Snowcat without cost, then Boston

3

Scientific's research and development expenditures were wasted, and the company suffered a loss equal to the research and development costs.

    **B. WHETHER THE DEFENDANT'S CONDUCT DOES OR DOES NOT COME WITHIN THE STRICT DEFINITION OF A SENTENCING GUIDELINES ABUSE OF A POSITION OF TRUST ENHANCEMENT, THE DEFENDANT'S BETRAYAL OF HIS EMPLOYER SHOULD BE CONSIDERED BY THE COURT IN ARRIVING AT A JUST SENTENCE.**

    1. **An Abuse of Trust Enhancement Should be Applied.**

The Report of Presentence Investigation declines to apply a two level upward adjustment in guidelines offense level for the defendant's abuse of a position of trust, U.S.S.G. § 3B1.3, even though the PSI Report states that "the defendant abused the trust of Boston Scientific in his position as an engineer." PSI Report at paragraph 23. The United States objects to this declination. The enhancement should be applied.

The main reason the PSI avoids applying the enhancement is because the defendant's position as an engineer "did not include professional or managerial discretion." PSI Report at paragraph 23. The PSI also claims that the defendant's position did "not involve a special skill that members of the general public do not possess." The government respectfully submits that on the contrary, it is clear to the point that judicial notice would be appropriate that members of the general public do not possess the skills of an engineer. The PSI also concedes that "the defendant's position allowed him access to trade secrets . . ."

It was the defendant's possession of the skills and training of an engineer - and his uniquely intimate familiarity with Mustang Plus and its predecessor products - that

gave him the expertise needed to choose which specific engineering documents, containing which specific trade secrets, he should purloin and download to his thumb drive if he wanted to succeed at manufacturing Snowcat.  It was the defendant's position with Boston Scientific, as an engineer on the Mustang Plus development team, that gave him access to the engineering document management database in the first place.  And it was the defendant's position with Boston Scientific and the special skills he developed working in that position that gave him the unique capacity to be able to exploit the stolen trade secrets in a way that would benefit himself while also causing actual harm to Boston Scientific.  These facts fit an abuse of a position of trust or use of a special skill enhancement, and that enhancement should be applied.

An objection that the enhancement does not apply because the defendant was not entrusted with managerial or professional discretion would be misplaced.  The defendant did not need to apply to a supervisor for permission every time he needed to access a database containing Boston Scientific's valuable trade secrets.  If he, in his professional engineering judgment, as informed by his university engineering education and his years of experience, thought he needed access to the database for some particular, professional purpose, he could go ahead and access the database.

### 2. The Defendant's Behavior Should be Considered Under 18 U.S.C. § 3553(a).

Even if the Court declines to impose a two level upward enhancement under U.S.S.G. § 3B1.3, it should, when considering a just sentence under the criteria listed in 18 U.S.C. § 3553(a), take into account as an aggravating factor the defendant's abuse of

5

his employer's trust (using "abuse of trust" in its general, rather than its guidelines-specific, meaning).

In an attempt to achieve his own personal goals as a start-up entrepreneur, the defendant stole trade secrets from his employer that his employer had spent millions of dollars developing. He was only in a position to steal these trade secrets because of his professional training and experience, and his years of experience with Boston Scientific. Even if it should not fit within the strict language of U.S.S.G. § 3B1.3, such behavior should be considered by the Court as aggravating, not mitigating, the degree of the defendant's criminality.

### C. A TWO LEVEL ENHANCEMENT FOR INTENDING TO TAKE TRADE SECRET INFORMATION OUT OF THE UNITED STATES SHOULD ALSO BE APPLIED.

The United States also objects to the PSI Report's decision, at paragraph 21, not to apply a two level upwards enhancement in guidelines offense level because the defendant sought to take trade secret information out of the United States. U.S.S.G. § 2B1.1(b)(13).[1] The defendant planned to manufacture the Snowcat catheter in Vietnam,[2] but the enhancement is not applied because "the trade secret was not intended to benefit a foreign government, instrumentality, or agent." This is a mistake of law, that mixes up the two parts of this enhancement. The enhancement has two parts, the first of

---

[1] The PSI Report cites U.S.S.G. § 2B1.1(b)(5) for this enhancement. The enhancement appearing at the cited section is an enhancement for stealing from a national cemetery. The enhancement at issue in this case actually appears at U.S.S.G. § 2B1.1(b)(13).

[2] The Preliminary PSI Report applied this enhancement. For that reason, the United States has not previously made the objection it now makes.

6

which – and the part that should be applied to this defendant - applies a two level increase whenever "the trade secret would be transmitted or transported out of the United States," U.S.S.G. § 2B1.1(b)(13)(A). The second part of the enhancement, which has no application to this case, and which is the one the PSI finds does not apply calls for a four level increase whenever, in the language quoted in the PSI, "the offense would benefit a foreign government, foreign instrumentality, or foreign agent," U.S.S.G. § 2B1.1(13)(B). The United States has never sought to apply the second of these two enhancements (the four level increase) and agrees that it does not apply. The first enhancement, however, the two level enhancement for taking or transmitting trade secret information from the United States, applies by its plain language, and should be used in this case to increase the defendant's adjusted offense level upwards by two levels. The PSI confuses the two parts of the enhancement with each other, and then declines to apply the two level increase because the four level increase does not apply, without, however, ever analyzing the applicability of the two level increase. But it is no argument against the application of the two level enhancement to point out the inapplicability of the four level enhancement.

### D. A GUIDELINES SENTENCE IS APPROPRIATE IN THIS CASE

The sentencing guidelines are, of course, advisory. They are, however, an appropriate sentence in this case. With an adjusted offense level of 6 + 18 (loss amount) +2 (abuse of a position of trust) + 2 (taking a trade secret out of the United States) – 3 (anticipated for acceptance of responsibility) = 25, and a criminal history category of I, the guidelines advise a sentence of 57 to 71 months' incarceration.

Given that the defendant stole over two hundred engineering documents from Boston Scientific, put some of those stolen trade secrets into business plans for Snowcat that he then emailed to people he viewed as potential investors, traveled to Vietnam to network with people who could assist him in his business plans, and fully intended to take the trade secrets he had stolen out of the United States, it is difficult to view a less-than-guidelines sentence as appropriate.

The defendant, in a nutshell, stole U.S.-developed high technology, and had every intention of taking it to a foreign country.  Even if the Court does not agree that a sentence as long as recommended by the guidelines is appropriate, the government emphatically believes that a sentence would be wholly inappropriate if it did not include as one of its components a significant period of incarceration.


Dated:  November 10, 2015       Respectfully Submitted,

                                ANDREW M. LUGER
                                United States Attorney

                                s/ John Docherty

                                BY:   JOHN DOCHERTY
                                      JOHN KOKKINEN
                                Assistant United States Attorneys