# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
## Cr. No. 14-304(PJS)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **DEFENDANT'S REPLY TO GOVERNMENT'S SENTENCING POSITION.** |
| vs. | |
| AARON QUOC KHIEU, | |
| Defendant. | |

Aaron Quoc Khieu, by and through his attorneys Robert D. Sicoli and Sarah M. MacGillis, provide the following Reply Memorandum of Law in Opposition to the Sentencing Position of the United States.

Besides being filed four days past the deadline,[1] the Government's Sentencing Memorandum is in error in the position it advocates in the instant sentencing. First, the Government erroneously suggests that Boston Scientific's product development and research were wasted to justify its assertion that the loss figure should be equated with research and development costs. Second, it incorrectly advocates an abuse of trust

---

[1] The Final PSI and Notice for Aaron Khieu was sent to the parties on October 23, 2015. It states that the position pleadings of the parties are due on November 6, 2015. The Government filed its position pleadings on November 10, 2015. There is no indication that the Government sought or was granted an extension of time to file its position pleadings. Defendant's were timely filed on November 6, 2015.

PDF created with pdfFactory trial version www.pdffactory.com

enhancement. And third, in its haste to rush its untimely memorandum to filing, the Government failed to read that part of the pre-sentence investigative report and the defendant's September 25, 2015 objection letter which preceded it that states that applying the "export prong" of the 2015 version of the trade secret guideline would violate the *Ex Post Facto* Clause, an argument it even fails to address in its position pleadings. Each will be discussed in turn.

For the reasons that follow, the Defendant asks that this court reject the Government's argument in every regard.

## **ARGUMENT**

1. *There simply was no loss that resulted from the offense within the meaning of the loss guideline.*

The Government's argument regarding loss is confusing. In one regard, it repeatedly asserts that Boston Scientific "wasted" $4.3 million on research and development costs on the Mustang Plus by virtue of Mr. Khieu's misappropriation of trade secrets. (Government's Sentencing Position at 2, 4). In still another, it correctly avers that there is no actual loss. (*Id.* at 3). Yet finally, it focuses on intended loss and says that research and development costs *are* intended loss. (*Id.* at 3). The Government's arguments are misplaced.

First, it cannot be disputed that Boston Scientific did not "waste" its research and development costs by virtue of the instant offense. The Mustang Plus balloon technology is still in use and is currently commercially available in both the Mustang PTA balloon catheter(FDA approval on August 22, 2014) and the Gladiator Elite PTA balloon

2

PDF created with pdfFactory trial version www.pdffactory.com

catheter(FDA approval on Feb. 28,2014). Boston Scientific has not lost any research and development costs-- and the Government knows this.

Second, the Government simply states that intended loss in this case is measured by research and development costs without any reference whatsoever to whether the use of such costs is "*appropriate and practicable under the circumstances.*" U.S.S.G. §2B1.1. It simply is not. As set forth in greater detail in the Defendant's initial position pleadings, using the research and development costs as a measure of intended loss fails to account for the fact that the Government has not and cannot establish that Mr. Khieu intended to use the whole of the information he downloaded to the economic detriment of Boston Scientific. This is true in this case because: 1. No product was ever built; 2. No firm decision was ever made regarding a product and, 3. Mr. Khieu had technical expertise in the development of PTA balloon catheters by virtue of more than 10 years building them including the Mustang Plus PTA balloon catheter.

Now the Government has settled on intended loss in its Reply Memorandum, but it is mistaken in many significant regards, starting with what purports to be a *direct quote* from the plea agreement. This *direct quote* forms the entire basis of the Government's argument, but the Government is not quoting from any document that Mr. Khieu signed. It is quoting language from an offered, but rejected plea agreement. The actual plea agreement Mr. Khieu signed states, in relevant part:

> The defendant sought to establish his own company, Snowflake Medical, which would manufacture a vascular catheter for PTA called "Snowcat." The defendant's "Snowcat" catheter concept incorporated one or more of the trade secrets of Boston Scientific's new catheter. In order to help manufacture "Snowcat," on or about October 8, 2012, in the State and

3

> District of Minnesota, the defendant transferred to a personal thumb drive from Boston Scientific's engineering document management system over 100 documents, many of which, including the documents whose theft is alleged in Count 11 of the Indictment, contained trade secrets and were prominently labeled as confidential, proprietary, intellectual property of Boston Scientific. The defendant then left Boston Scientific's premises with the thumb drive. (Final Plea Agreement).

In other words, the plea agreement specifically stated that Mr. Khieu intended to use only one possibly more, but certainly not all of the trade secrets he downloaded. Thus, there are just too many ifs to demonstrate that he intended Boston Scientific to suffer a loss in this case of $4.3 million. To the extent that the Government relies on *United States v. Killen* to suggest that it is relieved of its burden to prove that Mr. Khieu intended to cause Boston Scientific a $4.3 million loss, it must fail. *Killen* was decided before the 2015 amendment to the United States Sentencing Guideline which adopted the *Manatau* Court's definition of intended loss[2] and thus, *Killen's* holding, to the extent it dilutes the Government's burden of proof on intended loss, is of questionable endurance.

---

[2] The April 30 commentary to the amended U.S.S.G.§2B1.1, then not yet adopted, stated that the proposed amendment "reflects the Commission's continued belief that intended loss is an important factor in economic crime offenses, but also recognizes that sentencing enhancements predicated on intended loss, rather than losses that have actually accrued, should focus more specifically on the defendant's culpability." That commentary specifically references *Manatau* and does not mention *Killen* which was decided a year prior to the Commentary. It can be safely assumed that the Commission was aware of the *Killen* decision, but rejected it in favor of those circuits that focused on the subjective intent of the defendant in assessing loss. *See* April 30, 2015, "Amendments to the Sentencing Guidelines, p. 25, available here: http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150430_RF_Amendments.pdf ).

4

PDF created with pdfFactory trial version www.pdffactory.com

Because Boston Scientific has experienced no intended or actual loss, no adjustment under the Guidelines should follow.

### 2. *There was no abuse of a position of private trust*

The Probation Officer correctly determined that the offense did not involve an abuse of a position of private trust. This was simply a case of an employee stealing from his employer. That employee, Mr. Khieu, did not have the professional and managerial discretion contemplated by this guideline enhancement.

This Court can adjust a defendant's sentence upward for an abuse of a position of trust if "the defendant abused a position of public or private trust, . . . in a manner that significantly facilitated the commission or concealment of the offense." USSG § 3B1.3. In order for this adjustment to apply, the government must establish that the person: (1) occupies a position of trust, and (2) the position of trust was "used to facilitate significantly the commission or concealment of the crime." USSG § 3B1.3, *United States v. Spear,* 491 F. 3d 1150 (10th Cir. 2007); *see also United States v. Parrilla Roman,* 485 F.3d 185, 190-91 (1st Cir.2007) (discussing two-step process); *United States v. Andrews,* 484 F.3d 476 (7th Cir.2007); *United States v. Morris,* 286 F.3d 1291, 1295 (11th Cir.2002). The hallmark of a position of private trust is the exercise of significant "professional or managerial discretion." *See* U.S.S.G. §3B1.3, Application Note 1. Those who hold such a position are "subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." *Id.* Courts have noted that the term, "position of trust" is a bit of a misnomer as to the intended meaning of this

5

PDF created with pdfFactory trial version www.pdffactory.com

guideline enhancement; "it has little to do with *trustworthiness* and everything to do with *authority* and *discretion*." *Spears*, 491 F.3d at 1153. The discretion necessary to qualify for the enhancement exists where the person charged had the authority to make broad case-by-case decisions for the organization. *Id. quoting United States v. Edwards*, 325 F.3d 1184, 1187 (10th Cir. 2003), *see also United States v. Tiojanco,* 286 F.3d 1019, 1021 (7th Cir.2002). "Opportunity and access" cannot be equated with the kind of authority and substantial discretion contemplated by this guideline adjustment. *United States v. Edwards*, 325 F.3d 1184, 1187 (10th Cir. 2003). The Guidelines interpret a position of private trust narrowly reserving its application for only those defendants who exercise significant professional discretion. *United States v. Louis*, 559 F.3d 1220, 1229 (11th Cir. 2009). *United States v. Jankowski*, 194 F.3d 878 (8th Cir. 1999) is illustrative.

In *Jankowski*, the defendant was a courier for an armored car company. In that capacity, he was entrusted by his employer to manage delivery and pickup of money from location to location. *Id*. at 884-885. Jankowski conspired with others to assist them in the robbery of the armored car, netting the conspirators many thousands of dollars. At sentencing, the Government advocated and the district court adopted the upward adjustment for an abuse of a position of private trust. *Id.* The Eighth Circuit Court of Appeals reversed holding that Jankowski's position as a courier was not one where he was afforded "substantial discretionary judgment that is ordinarily given considerable deference." *Id.* at 885. Thus, the enhancement did not apply.

The court in *United States v. Tann* came to a similar conclusion. 532 F.3d 868 (D.C.Cir. 2008). In *Tann*, the defendant worked as an office manager for two non-profit

6

PDF created with pdfFactory trial version www.pdffactory.com

organizations. 532 F.3d 868 (D.C.Cir. 2008). As an office manager, her job responsibilities at one company included "hiring, ordering equipment, scheduling travel, and managing the expenditures and checks that were written," while at the other she prepared checks, kept the books, reconciled monthly bank accounts, and maintained the ledger. *Id.* at 871. The D.C. Circuit held that Tann did not hold a position of trust within the meaning of the guideline observing:

> Tann may have occupied a position of trust in the colloquial sense that she was trusted not to use her access for nefarious purposes; in that sense, so is every bank teller who has access to the bank's money and every janitor who cleans an office where desk drawers are left unlocked. Like the bank teller or the janitor, however, Tann did not have a job that required her to exercise professional or managerial discretion, which is the standard set forth in the application note to the Guideline. As we have said before, to apply the enhancement to a defendant merely because he or she is entrusted with valuable things and has little or no supervision while performing his or her duties would stretch the abuse-of-trust enhancement to cover endless numbers of jobs involving absolutely no professional or managerial discretion, in clear contravention of the plain language of the commentary to section 3B1.3. *Id.* at 875–76.

In the present case, there was no abuse of a position of private trust as contemplated by the guidelines because Mr. Khieu did not possess or exercise substantial discretionary judgment. Mr. Khieu was part of a team of engineers who worked on PTA balloon catheters and other medical devices. Like the defendants in *Jankowski* and *Tann* whose work was defined by others, here the scope of Mr. Khieu's work was defined by his employer generally and by his supervisor, Dan Horn, specifically. Furthermore, his work was continuously reviewed by his supervisor and was shared with numerous other people by virtue of a document management system. There is not a shred of evidence that Mr. Khieu possessed *substantial discretionary judgment* in his position as an

7

PDF created with pdfFactory trial version www.pdffactory.com

engineer as contemplated by this guideline. *See Jankowski*, 194 F.3d at 885. Clearly, any discretion he possessed was far less than that of the defendant in *Tann*.

Now the Government avers that it was Mr. Khieu's position as an engineer that gave him access to Boston Scientific's engineering data base and "gave him the expertise needed to choose which specific engineering documents" to steal. *See* Government's Sentencing Position at 5. The same could be said of the defendant in *Jankowski* and in *Tann*. In *Jankowski*, it was the defendant's position that gave him access to significant cash of the armored truck company who employed him as well as his familiarity with the route that told him when the theft was most likely to be successful. This position and knowledge is what allowed the offense in *Jankowski* to occur, but the Eighth Circuit still reversed the enhancement for the Government's failure to establish Jankowski exercised substantial discretionary judgment. In *Tann*, it was the defendant's access to the companies' books and ledgers that allowed Tann to know what to steal and how to avoid detection, but the D.C. Circuit rejected the enhancement. This court should do the same. What the Government describes is simply not an abuse of a position of trust, but a particular dislike for an employee's theft from his employer.

This is also why this court should reject the government's invitation to allow that *same basis* to serve as grounds for an adjustment to Mr. Khieu's sentence under §3553. First and importantly, this court can consider the fact that the Sentencing Commission narrowly tailored the abuse of position of trust enhancement to fit but a few defendants. That commission-based decision would be severely undermined by adopting the Government's invitation to tuck a broader class of defendants under the umbrella of a

8

PDF created with pdfFactory trial version www.pdffactory.com

§3553 enhancement and give the Government a second bite at the apple when its factual showing was weak under the guideline. Indeed, the Government cites no authority for this bold proposition. As the court observed in *United States v. Edwards*, the establishment of trust and confidence inheres in most fraud cases, *United States v. Edwards*, 325 F.3d 1184, 1187 (10th Cir. 2003); whether the theft be from a close friend, relative or employer, no adjustment ought to apply under §3553. There is just nothing extraordinary or unusual for purposes of criminal sentencing on a fraud case when an employee steals from his or her employer.

    3. <u>Application of the guideline enhancement for intending to export the trade secret would violate the *Ex Post Facto* Clause</u>.

The Government takes issue with the fact that the probation officer did not apply an enhancement for the intent to transport a trade secret out of the country. The probation officer was correct in his determination that this enhancement did not apply because applying the 2015 version of the United States Sentencing Guideline fraud guideline would violate the *Ex Post Facto* Clause as it relates to this enhancement. The Probation Officer addressed that issue in Paragraph 18 of the presentence investigative report.

U.S.S.G. §1B1.11 provides that "If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *Ex Post Facto* Clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date the offense of conviction was committed. The Supreme Court has held that the *Ex Post Facto* Clause applies to 'sentencing guidelines that expose the

PDF created with pdfFactory trial version www.pdffactory.com

defendant to increased punishment.'" U.S.S.G. §1B1.11, Background, *citing Peugh v. United States* 144 S.Ct. 2072 (2013).

The Sentencing Guidelines in effect at the time of the defendant's offense are the 2011 and 2012 United States Sentencing Guidelines. Those versions of the Guidelines provided: "If the offense involved misappropriation of a trade secret and the defendant knew or intended that the offense would benefit a foreign government, foreign instrumentality, or foreign agent, increase by 2 levels." U.S.S.G. §2B1.1, b.5. "Instrumentality" is defined at 18 U.S.C. §1839 as "any agency, bureau, ministry, component, institution, association, or any legal, commercial, or business organization, corporation, firm, or entity that is substantially owned, controlled, sponsored, commanded, managed, or dominated by a foreign government."

In the case before the court, there is no evidence that the defendant knew or intended that the offense would benefit a foreign government, instrumentality or agent. Thus, the probation officer correctly determined no points should be added for this specific offense characteristic.

## CONCLUSION

For those reasons set forth herein and in the Defendant's Position with Regard to Sentencing, the Defendant respectfully requests that this Court sentence him to a sentence of five years of probation together with a period of home confinement.

Dated: December 23, 2015            Respectfully submitted,

                                    By: /s/ *Robert D. Sicoli*
                                        Robert D. Sicoli
                                        Attorneys for Defendant

10

PDF created with pdfFactory trial version www.pdffactory.com

333 S. 7th St., Suite 2350
Minneapolis, MN 55402
Telephone: (612) 871-0708
Reg. No. 178238

Sarah M. MacGillis
Attorney for Defendant
333 S. 7th Street, Ste. 2350
Minneapolis, MN 55402
Telephone: (612) 455-1034
Reg. No. 282017

PDF created with pdfFactory trial version www.pdffactory.com